[860 NYS2d 223]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SCOTT C. WEAVER, Appellant.

Third Department, June 5, 2008

## APPEARANCES OF COUNSEL

*Smith Hernandez, L.L.C.*, Troy (*Trey Smith* of counsel), for appellant.

*P. David Soares, District Attorney*, Albany (*Christopher D. Horn* of counsel), for respondent.

## OPINION OF THE COURT

ROSE, J.

A police officer, in the course of investigating a series of burglaries and acting without a warrant, attached a battery operated global positioning system (hereinafter GPS) device under the bumper of defendant's van while it was parked on a public street. Based upon the data retrieved from this device and other evidence, defendant and a codefendant were arrested and charged with burglary in the third degree and grand larceny in the second degree in relation to a theft from a K-Mart store,

as well as burglary in the third degree and petit larceny in relation to a theft from a meat market six months earlier. Prior to trial, defendant moved unsuccessfully to suppress all evidence obtained by the warrantless placement of the GPS tracking device. At trial, the codefendant's girlfriend testified for the People, and Supreme Court found her to be an accomplice as to the meat market burglary, but not as to the K-Mart burglary. She testified to the conduct of defendant and the codefendant both before and after both burglaries, and the data produced by the tracking device tended to link defendant to the K-Mart burglary. The jury then found defendant guilty of burglary in the third degree and attempted grand larceny in the second degree as to the K-Mart burglary, but not guilty of the burglary at the meat market. Supreme Court sentenced him to two concurrent prison terms of $2^{1}/_{3}$ to 7 years, and he now appeals.

We find no merit in defendant's initial contention that Supreme Court should have found his codefendant's girlfriend to be an accomplice in the K-Mart burglary as a matter of law, or at least should have submitted the issue of whether she was an accomplice to the jury. In support of this claim, defendant cites the evidence at trial that the girlfriend accompanied defendant and the codefendant at some earlier time when the two men "scoped out" the K-Mart and that she had participated with them in several prior burglaries. In order for a witness to be an accomplice, however, the evidence must show that "the witness took part in the preparation or perpetration of the [charged] crime with intent to assist therein, or that the witness counseled, induced or encouraged the crime" (*People v Torello*, 94 AD2d 857, 857 [1983]; *see* CPL 60.22 [2]; *People v Faulkner*, 36 AD3d 951, 951 [2007], *lv denied* 8 NY3d 922 [2007]). Here, unlike the meat market burglary where the girlfriend drove defendant and the codefendant to the scene and waited for them in the car while they committed the burglary, there is no evidence that she took any active role in reconnoitering or planning the K-Mart burglary and she stayed at home when it was committed (*see People v Thomas*, 33 AD3d 1053, 1054-1055 [2006], *lv denied* 8 NY3d 885 [2007]; *People v Wesley*, 19 AD3d 937, 937-938 [2005], *lv denied* 5 NY3d 857 [2005]). Nor does her admitted participation in other burglaries establish that she took part in the preparation or commission of the K-Mart burglary. Thus, Supreme Court did not err in denying defendant's request that she be treated as an accomplice in its instructions to the jury.

Defendant next contends that County Court (Breslin, J.) erred in not suppressing the evidence obtained from the GPS tracking device attached under the bumper of his vehicle. The device was not connected to the vehicle's electrical system, was not placed inside any enclosed or interior spaces within the vehicle, did not monitor or record what occurred within the vehicle and was not used to monitor the vehicle's movements on private property. Nonetheless, defendant argues that the attachment of the device to the bumper or undercarriage of his vehicle was an intrusion into a constitutionally protected area and enabled police to track his location without being detected, matters in which he claims a privacy interest protected by both the Fourth Amendment of the US Constitution and NY Constitution, article I, § 12.

We note that two trial courts in New York have considered whether placement of a GPS tracking device on a vehicle constitutes a search for which a warrant is necessary and have reached opposite conclusions (*compare People v Gant*, 9 Misc 3d 611, 618 [Westchester County Ct 2005] [finding no requirement to obtain a search warrant before attaching a GPS device to track the movements of a vehicle on public roadways], *with People v Lacey*, 3 Misc 3d 1103[A], 2004 NY Slip Op 50358[U], *8 [Nassau County Ct 2004] [finding that, in the absence of exigent circumstances, the attachment of a tracking device on the undercarriage of a vehicle is an intrusion requiring a search warrant]). No appellate court in New York, however, has yet considered whether such electronic surveillance constitutes a violation of the vehicle owner's constitutionally protected reasonable expectation of privacy.

■ In addressing this issue, we are guided by the well-settled principle that "where there is no legitimate expectation of privacy, there is no search or seizure" under the Fourth Amendment (*United States v Moran*, 349 F Supp 2d 425, 467 [2005]). As the federal courts have observed, a defendant has no reasonable expectation of privacy in the publicly accessible exterior of his or her vehicle, and the undercarriage is part of the vehicle's exterior (*see New York v Class*, 475 US 106, 112-114 [1986]; *United States v Rascon-Ortiz*, 994 F2d 749, 754 [10th Cir 1993]; *see also People v Jackson*, 143 AD2d 471, 472 [1988]). Nor can a defendant expect privacy as to the location of his or her vehicle on public streets (*see United States v Knotts*, 460 US 276, 281-282 [1983]; *People v Edney*, 201 AD2d 498, 499 [1994], *lv denied*

83 NY2d 910 [1994]). Thus, it has been held that collecting information about the movement of a vehicle on public thoroughfares by means of an electronic device attached to a vehicle's undercarriage, which does not damage the vehicle or invade its interior, does not constitute a search or seizure in violation of the Fourth Amendment (*see United States v Knotts*, 460 US at 281-282; *United States v McIver*, 186 F3d 1119, 1126-1127 [9th Cir 1999], *cert denied* 528 US 1177 [2000]; *United States v Coulombe*, 2007 WL 4192005, *4, 2007 US Dist LEXIS 86756, *12 [ND NY 2007]; *United States v Moran*, 349 F Supp 2d at 467). Moreover, nothing in the Fourth Amendment prohibits the police from using science and technology to enhance or augment their ability to surveil that which is already public (*see United States v Knotts*, 460 US at 282, 284). Inasmuch as constant visual surveillance by police officers of defendant's vehicle in plain view would have revealed the same information and been just as intrusive, and no warrant would have been necessary to do so, the use of the GPS device did not infringe on any reasonable expectation of privacy and did not violate defendant's Fourth Amendment protections (*see People v Wemette*, 285 AD2d 729, 729-730 [2001], *lv denied* 97 NY2d 689 [2001]; *People v Edney*, 201 AD2d at 499).

To the extent that defendant argues that the NY Constitution affords greater protection than the US Constitution against intrusive searches, we note that the threshold issue remains whether the defendant had "a reasonable expectation of privacy in the place or object of the search" (*People v Reynolds*, 71 NY2d 552, 557 [1988]; *see People v Scott*, 79 NY2d 474, 486-487 [1992]).[1] As the Court of Appeals has instructed, courts analyzing a given investigative procedure under our state constitutional law should "focus on whether there has been an intrusion into an area where an individual has a reasonable expectation of privacy" (*People v Dunn*, 77 NY2d 19, 25 [1990], *cert denied* 501 US 1219 [1991]). Absent a showing of a legiti-

---

1. We are not persuaded by the dissent's reliance upon the holding in *Katz v United States* (389 US 347 [1967]). While *Katz* held that a person conducting a private telephone conversation in a public telephone booth has a reasonable expectation of privacy, the United States Supreme Court tellingly noted that when a person enters a telephone booth, he or she seeks to exclude the uninvited ear, but "not the intruding eye" (*id.* at 352). Thus, in *Katz*, the question was limited to whether there is a reasonable expectation of privacy in a person's private conversations, not in the open presence of a motor vehicle in a public place.

mate expectation of privacy, a warrant need not be obtained (*Matter of Muhammad F.*, 94 NY2d 136, 153 [1999]).[2] While a reasonable expectation of privacy is violated under the NY Constitution when the police intrude into the passenger compartment of a vehicle without appropriate justification (*see People v Torres*, 74 NY2d 224, 228 [1989]), that is not our situation here. Rather, because we recognize the diminished expectation of privacy in a vehicle on a public roadway (*see People v Yancy*, 86 NY2d 239, 246 [1995]; *People v Scott*, 63 NY2d 518, 525 [1984]; *see also People v Belton*, 55 NY2d 49, 53 [1982]), and that, generally, "conduct and activity which is readily open to public view is not protected" (*People v Reynolds*, 71 NY2d at 557), we cannot agree that the NY Constitution precluded the warrantless placement of the GPS tracking device on defendant's vehicle or retrieval of its data in connection with this ongoing police investigation.

We have considered defendant's remaining arguments, including his assertion that Supreme Court erred in permitting the People to present evidence that he had attempted to persuade the codefendant's girlfriend to absent herself from his trial, and conclude that they are lacking in merit.

STEIN, J. (dissenting). The question of whether the NY Constitution prohibits constant surveillance of an individual's whereabouts by means of a global positioning system (hereinaf-

---

2. Unlike the New York Court of Appeals, the courts in the cases cited by the dissent construed the provisions prohibiting unreasonable searches in their respective state constitutions without consideration of whether the targeted person had a reasonable expectation of privacy in the movements of his vehicle (*see State v Jackson*, 150 Wash 2d 251, 260, 76 P3d 217, 222 [2003]; *State v Campbell*, 306 Or 157, 164, 759 P2d 1040, 1044 [1988]). Those courts focused instead on the nature and intrusiveness of the police conduct in determining what constitutes a search, finding that "[a] privacy interest . . . is an interest in freedom from particular forms of scrutiny" even though there may be no expectation of privacy in the movement of a vehicle over public thoroughfares (*State v Campbell*, 306 Or at 170, 759 P2d at 1047; *see also State v Wacker*, 317 Or 419, 425, 856 P2d 1029, 1033 [1993]). In addition, it clearly was this focus on the intrusiveness of the scrutiny that led the court in *State v Campbell* (*supra*) to reject the "premise . . . that information legitimately available through one means may be obtained through any other means without engaging in a search" (*State v Campbell*, 306 Or at 166, 759 P2d at 1045). While these analyses may be valid under the constitutions and jurisprudence in Washington and Oregon, our Court of Appeals has not adopted them in considering the scope of the protection afforded by NY Constitution, article I, § 12 (*see e.g. People v Dunn*, 77 NY2d at 25; *see also People v Quackenbush*, 88 NY2d 534, 541-543 [1996]; *People v Willette*, 42 AD3d 674, 675 [2007], *lv denied* 9 NY3d 883 [2007]).

ter GPS) device without a search warrant has far-reaching implications and has never been addressed by any appellate court of this state. While I agree that an analysis under federal law would dictate the result reached by the majority (*see New York v Class*, 475 US 106, 113-114 [1986]; *United States v Knotts*, 460 US 276 [1983]; *United States v Rascon-Ortiz*, 994 F2d 749, 754 [10th Cir 1993]; *see also People v Jackson*, 143 AD2d 471, 472 [1988]), we are not bound by federal law (*see People v Scott*, 79 NY2d 474, 496-497 [1992]). "[P]rinciples of federalism secure to a [s]tate the right to afford its citizens greater insulation from governmental intrusion than is provided under the Fourth Amendment" (*People v Reynolds*, 71 NY2d 552, 557 [1988]). "State courts may not circumscribe rights guaranteed by the Federal Constitution, [but] they may interpret their own law to supplement or expand them" (*People v P.J. Video*, 68 NY2d 296, 302 [1986], *cert denied* 479 US 1091 [1987]). Moreover, the Court of Appeals has "frequently applied the State Constitution, in both civil and criminal matters, to define a broader scope of protection than that accorded by the Federal Constitution in cases concerning individual rights and liberties" (*id.* at 303; *see People v Torres*, 74 NY2d 224, 226, 228 [1989]) and, "in applying both [f]ederal and [s]tate law, has consistently adhered to the concept . . . that the Fourth Amendment and [NY Constitution,] article I, § 12 protect the privacy rights of persons, not places" (*People v Scott*, 79 NY2d at 488 [citations omitted]; *see People v Scott*, 79 NY2d at 482).

While New York courts have generally found that there is no expectation of privacy with regard to conduct that is readily open to public view (*see People v Edney*, 201 AD2d 498 [1994], *lv denied* 83 NY2d 910 [1994] [driving on a street]) or in areas readily accessible to the public (*see People v Jackson*, 143 AD2d 471 [1988] [drugs behind rear tire and license plate]), the United States Supreme Court has held that what a person "seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected" (*Katz v United States*, 389 US 347, 351 [1967]).* I would so find under the particular circumstances presented herein.

---

* *People v Willette* (42 AD3d 674 [2007], *lv denied* 9 NY3d 883 [2007]), *People v Edney* (201 AD2d 498 [1994]) and *People v Jackson* (143 AD2d 471 [1988])—and other appellate decisions in this state cited by the majority that address the right to privacy vis-à-vis the protection against unreasonable search and seizure—are distinguishable from the facts presented here and are not inconsistent with this principle (*see e.g. People v Reynolds*, 71 NY2d 552 [1988] [no expectation of privacy in open fields where no precaution taken to

(n. cont'd)

Specifically, I would reject the "premise . . . that information legitimately available through one means may be obtained through any other means without engaging in a search" (*State v Campbell*, 306 Or 157, 166, 759 P2d 1040, 1045 [1988]). Instead, I would adopt the principle that "[a] privacy interest . . . is an interest in freedom from particular forms of scrutiny" (306 Or at 170, 759 P2d at 1047; *see Katz v United States*, 389 US at 350), and would find that "[a]ny device that enables the police quickly to locate a person or object anywhere . . . day or night, over a period of several days, is a significant limitation on freedom from scrutiny" (*State v Campbell*, 306 Or at 172, 759 P2d at 1048) and upon a person's reasonable expectation of privacy, even if it occurs in a place where an expectation of privacy would not be considered reasonable under other circumstances. Stated otherwise, while the citizens of this state may not have a reasonable expectation of privacy in a public place at any particular moment, they do have a reasonable expectation that their every move will not be continuously and indefinitely monitored by a technical device without their knowledge, except where a warrant has been issued based on probable cause (*see People v Lacey*, 3 Misc 3d 1103[A], 2004 NY Slip Op 50358[U], *7 [Nassau County Ct 2004]; *see generally Katz v United States*, 389 US at 350, 357). Surveillance with a GPS device is not analogous to being followed by the police on public roads (*see State v Jackson*, 150 Wash 2d 251, 261-262, 76 P3d 217, 223 [2003]; *State v Campbell, supra*). In fact, in *State v Campbell* (*supra*), a radio transmitter was attached to the defendant's automobile, precisely because the sheriff's department had been unsuccessful in physically following the automobile on a number of occasions. Furthermore, "[a]s with infrared thermal imaging surveillance, use of GPS tracking devices is a particularly intrusive method of surveillance, making it possible to acquire an enormous amount of personal information about the citizen" (*State v Jackson*, 150 Wash 2d at 264, 76 P3d at 224).

At some point, the enhancement of our ability to observe by the use of technological advances compels us to view differently the circumstances in which an expectation of privacy is reasonable. In my opinion, that point has been reached in the facts before us. Thus, where, as here, no warrant was issued authorizing the placement of the GPS device on defendant's car, I would find that defendant's rights against unreasonable search and

preclude public entry]; *People v Wemette*, 285 AD2d 729 [2001], *lv denied* 97 NY2d 689 [2001] [no reasonable expectation of privacy on front porch]).

seizure under NY Constitution, article I, § 12 were violated. In my view, this conclusion is not inconsistent with the jurisprudence of this state, which includes an expansive view of individual rights under the NY Constitution (*see People v Scott*, 79 NY2d at 488; *People v Torres*, 74 NY2d at 226, 228; *People v P.J. Video*, 68 NY2d at 303). Accordingly, I would suppress the evidence obtained from the GPS tracking device and remit the matter for a new trial.

CARDONA, P.J., CARPINELLO and MALONE, JR., concur with ROSE, J.; STEIN, J., dissents in a separate opinion.

Ordered that the judgment is affirmed, and matter remitted to the Supreme Court for further proceedings pursuant to CPL 460.50 (5).