[967 NE2d 656, 944 NYS2d 433]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v JEFFERY H. MILLER, Respondent.

Argued February 16, 2012; decided March 22, 2012

## POINTS OF COUNSEL

*Michael C. Green, District Attorney*, Rochester (*Geoffrey Kaeuper* of counsel), for appellant. I. The notations on the verdict sheet were permissible under CPL 310.20 (2) to allow the jury to distinguish between the various homicide charges. (*People v Collins*, 99 NY2d 14; *People v Cole*, 85 NY2d 990; *People v Damiano*, 87 NY2d 477; *People v Sotomayer*, 173 AD2d 500, 79 NY2d 1029.) II. Even if the notations exceeded the bounds of CPL 310.20 (2), the error was harmless. (*People v Taylor*, 76 NY2d 873; *People v Owens*, 69 NY2d 585; *People v Crimmins*, 36 NY2d 230; *People v Damiano*, 87 NY2d 477; *People v Spivey*, 81 NY2d 356; *People v Santi*, 3 NY3d 234; *People v Allen*, 92 NY2d 378; *People v Sotomayer*, 79 NY2d 1029; *People v Smart*, 96 NY2d 793; *People v Smith*, 16 NY3d 786.) III. Even if defendant's murder conviction had been reversible, the remaining convictions should stand as they could not have been affected by annotations that related only to the homicide counts. (*People v*

*Kelly*, 76 NY2d 1013; *People v Cohen*, 50 NY2d 908; *People v Damiano*, 87 NY2d 477; *People v Baghai-Kermani*, 84 NY2d 525.)

*Timothy P. Donaher, Public Defender*, Rochester (*Drew R. Du-Brin* of counsel), for respondent. The Supreme Court committed reversible error by providing a verdict sheet to the jury, over defense counsel's objection, containing unauthorized legal text. (*People v Owens*, 69 NY2d 585; *People v Odell*, 230 NY 481; *People v Brooks*, 70 NY2d 896; *People v Damiano*, 87 NY2d 477; *People v Sanders*, 70 NY2d 837; *People v Taylor*, 76 NY2d 873; *People v Spivey*, 81 NY2d 356; *People v Sotomayer*, 79 NY2d 1029; *People v Collins*, 99 NY2d 14; *People v Rosario*, 26 AD3d 206.)

**OPINION OF THE COURT**

SMITH, J.

We have held that it is reversible error, not subject to harmless error analysis, to provide a jury in a criminal case with a verdict sheet that contains annotations not authorized by CPL 310.20 (2) (*see People v Spivey*, 81 NY2d 356, 361-362 [1993]; *People v Damiano*, 87 NY2d 477 [1996]). The Legislature, responding to these decisions, amended the statute to expand what is permitted in the verdict sheet, but it left the basic principle unchanged: Nothing of substance can be included that the statute does not authorize. Because that rule was violated in this case, our previous holdings require that defendant's conviction be set aside.

I

Defendant was charged with second-degree murder and several other crimes as a result of the shooting of his former girlfriend. At defendant's request, the court submitted to the jury his claim that he acted under the influence of extreme emotional disturbance—a claim which, if accepted, would result in his conviction for first-degree manslaughter rather than murder (Penal Law § 125.25 [1] [a]; § 125.20 [2]). Extreme emotional disturbance is an affirmative defense, and the defendant has the burden of establishing it by a preponderance of the evidence (Penal Law § 125.25 [1] [a]; § 25.00 [2]).

The trial court submitted a six-page verdict sheet to the jury. The first page is the one in issue here. That page provided space for the jurors to record their verdict on the second-degree murder charge, and instructed them that if their verdict on that

count was guilty they must consider the extreme emotional disturbance defense and complete the rest of the page. The form then asked: "Has the Defendant established by a ***preponderance of the evidence*** that he acted under Extreme Emotional Disturbance?" Defendant objected to this language, but the trial court refused to remove it.

The jury convicted defendant of second-degree murder and found that the extreme emotional disturbance defense had not been established. The Appellate Division reversed and ordered a new trial, holding that there was a violation of CPL 310.20 (2) and that harmless error analysis could not be applied (*People v Miller*, 73 AD3d 1435 [4th Dept 2010]). A Judge of this Court granted the People leave to appeal, and we now affirm.

## II

CPL 310.20 says, in relevant part:

> "Upon retiring to deliberate, the jurors may take with them: . . .

> "2. A written list prepared by the court containing the offenses submitted to the jury by the court in its charge and the possible verdicts thereon. Whenever the court submits two or more counts charging offenses set forth in the same article of the law, the court may set forth the dates, names of complainants or specific statutory language, without defining the terms, by which the counts may be distinguished; provided, however, that the court shall instruct the jury in its charge that the sole purpose of the notations is to distinguish between the counts."

Until 1996, the statute did not contain the final ("Whenever") sentence; it ended with "verdicts thereon." In several cases decided under the earlier version of the statute, we ordered a new trial where a verdict sheet had been submitted to the jury that, in addition to identifying the crimes charged, listed some of the crimes' statutory elements (*People v Nimmons*, 72 NY2d 830 [1988]; *People v Taylor*, 76 NY2d 873 [1990]; *People v Kelly*, 76 NY2d 1013 [1990]; *see also People v Sotomayor*, 79 NY2d 1029, 1030 [1992] [reversible error to submit a verdict sheet that "recited more" than CPL 310.20 allowed]). In *Spivey*, we said that "unless the parties agree" the submission of such a verdict sheet "is reversible error" (81 NY2d at 361). And in

*Damiano* we rejected, over a strong dissent, the idea that an error of this kind could "be deemed harmless"; that approach, we said, would be inconsistent with "our decisions strictly construing this provision" (87 NY2d at 484-485).

■■ In this case, the People do not dispute that the law as it stood at the time of *Spivey* and *Damiano* would require reversal of defendant's conviction. They argue, however, that a 1996 amendment to CPL 310.20 (2) (L 1996, ch 630, § 2) alters that conclusion in two ways: by authorizing the language that the judge submitted to the jury here, and by permitting the use of harmless error analysis. We conclude that the amendment did neither of these things.

■ The 1996 amendment added what is now the last sentence of CPL 310.20 (2). That sentence (later changed in a way irrelevant to this case) permits a verdict sheet to include "the dates, names of complainants or specific statutory language . . . by which the counts may be distinguished." This does alter the holding in *Damiano* and the cases that *Damiano* followed, but it does not permit what the trial court did here. The court added not "statutory language . . . by which the counts may be distinguished," but an instruction on burden of proof. Nothing in CPL 310.20 (2) can be read to authorize this.

■ Nor did the 1996 amendment to CPL 310.20 (2) address the issue of harmless error. It left intact the holding of *Damiano* that harmless error analysis cannot be applied where a verdict sheet exceeds the limitations that section 310.20 (2) imposes. The Appellate Division was therefore correct in holding that *Damiano*, and the cases on which *Damiano* was based, require reversal of defendant's conviction.

In arguing to the contrary, the People rely not on the statutory language contained in the 1996 amendment, but on language in the memorandum by which Governor Pataki expressed his approval of that amendment (Governor's Approval Mem, Bill Jacket, L 1996, ch 630, at 7-9, reprinted in 1996 McKinney's Session Laws of NY, at 1907-1909). The Approval Memorandum acknowledges that "from time to time" judges might in the future place notations on verdict sheets beyond what the newly amended statute would permit (Bill Jacket, L 1996, ch 630, at 9, 1996 McKinney's Session Laws of NY, at 1909). The memorandum adds:

> "However, any such errors will no[t] be subject to the onerous automatic reversal rule of <u>Spivey,</u> for

that rule is predicated on the complete absence of statutory authority for any verdict sheet annotations. See e.g., People v. Owens, 69 N.Y.2d 585, 591-92 (1987). As a result of the bill, there will be such authority and thus any erroneous verdict sheet notations will be subject to harmless error analysis." (*Id.*)

The implicit reasoning of the Approval Memorandum—reasoning the People urge us to follow here—is this: In *Owens*, in the passage the Approval Memorandum cites, we held that an error in submitting portions of a written charge to the jury was not subject to harmless error analysis because "the distribution of written instructions to the jury is not expressly authorized by law" (69 NY2d at 591-592). From this it is inferred that *Spivey* and *Damiano* rejected harmless error analysis because annotated verdict sheets were also "not expressly authorized by law" (though neither *Spivey* nor *Damiano*, nor any other case involving annotated verdict sheets, says this). And, the reasoning concludes, since *some* verdict sheet annotations are authorized by law under the 1996 amendment, an error as to *what* annotations are permissible may now be deemed harmless.

We find this reasoning too attenuated to justify rejecting *Spivey*'s and *Damiano*'s holding on the harmless error issue. We recognize that, as the dissent points out, it was the Governor who proposed the 1996 amendment, and his view of what it means is relevant legislative history. But legislative history cannot supply something that is just not in the statute.

If the Legislature intended harmless error analysis to be applied in cases like this, it had only to say so. It could have used the language that it adopted in another context, to overrule our holding in *People v Ranghelle* (69 NY2d 56, 63 [1986]), in which we held that a failure to deliver *Rosario* material to defense counsel "constitutes per se error requiring that the conviction be reversed." The Legislature responded by enacting CPL 240.75, which says that such a failure does not justify reversal "in the absence of a showing . . . that there is a reasonable possibility that the non-disclosure materially contributed to the result."

By contrast, the legislative response to *Spivey* and *Damiano* says not a word about harmless error. We adhere to the holdings of those cases that harmless error analysis is inappropriate where the limits imposed on verdict sheet annotations by CPL 310.20 (2) have been exceeded.

Accordingly, the order of the Appellate Division should be affirmed.

READ, J. (dissenting). I would uphold the conviction because the complained-of error was harmless. The majority rejects this option on the ground that the Legislature's amendment of CPL 310.20 in 1996 "left intact" our precedents holding "that harmless error analysis cannot be applied where a verdict sheet exceeds the limitations that section 310.20 (2) imposes" (majority op at 708). On the contrary, the 1996 amendment was specifically intended to countermand these and other precedents thought to create "hyper-technical rules . . . bestow[ing] new trials on fairly convicted criminals" (Governor's Approval Mem, Bill Jacket, L 1996, ch 630, at 9, reprinted in 1996 McKinney's Session Laws of NY, at 1909), such as the defendant in this case. Accordingly, I respectfully dissent.

In 1996, the Governor submitted a Program Bill to the Legislature that, as he explained in his Approval Memorandum, was meant to prevent "the needless reversal of dozens of fairly obtained criminal convictions . . . occasioned by the Court of Appeals' decisions in People v. Page, 72 N.Y.2d 69 (1988), and People v. Spivey, 81 N.Y.2d 356 (1993)" (Bill Jacket, L 1996, ch 630, at 7, 1996 McKinney's Session Laws of NY, at 1907). The Governor's proposed bill was introduced in the Senate "at the request of the Governor" on July 11, 1996 as Senate Bill S7929 (Preiser, Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL 310.20, at 350 [2002 ed]). The Governor issued a message of necessity to the Senate, which passed the bill that same day. Senate Bill S7929 was then delivered to the Assembly, where it was substituted for Assembly Bill A11155-A; the Governor likewise issued a message of necessity to the Assembly, which also passed the bill on July 11, 1996. Senate Bill S7929 was then returned to the Senate, which delivered it to the Governor on September 3, 1996. The Governor signed the bill on September 4, 1996, which thereby became chapter 630 of the Laws of 1996. He simultaneously issued a detailed Approval Memorandum.

Section 1 of chapter 630 amended CPL 270.35 to create a bright-line rule that essentially circumvented Page's strictures on the discharge of sworn jurors and their replacement with alternates (see People v Jeanty, 94 NY2d 507, 513-516 [2000] [discussing legislative history of section 1 of the Laws of 1996, chapter 630]). Section 2 amended CPL 310.20 by granting trial judges express authority to place certain kinds of explanatory

information on verdict sheets. As the Governor explained, section 2 was intended to prevent the problems created

"[u]nder a line of cases culminating in People v. Spivey, [whereby] trial judges no longer [had] the authority they long enjoyed to enhance the ability of deliberating juries to distinguish between seemingly identical or substantially similar counts by annotating verdict sheets with distinguishing, explanatory phrases . . .

"For decades, until the Court of Appeals issued a series of decisions culminating in People v. Spivey, trial judges helped juries by putting brief explanatory notations on verdict sheets to distinguish otherwise identical counts.

"Because of the absence of express statutory authority for such notations, the Spivey line of cases holds that trial judges cannot put them on verdict sheets, and that harmless error analysis cannot be used to save convictions obtained in cases in which the verdict sheet contained such innocuous but helpful notations. As a result, many fairly tried and convicted defendants have had their convictions reversed on appeal.

"The amendments made by the bill to subdivision 2 of section 310.20 of the [CPL] will restore trial judges' authority to annotate verdict sheets, facilitate an orderly and intelligent deliberative process and prevent needless reversals of convictions. *To be sure, trial judges from time to time may place on verdict sheets distinguishing notations that do not fit within the technical terms of the bill. However, any such errors will no[t] be subject to the onerous automatic reversal rule of Spivey, for that rule is predicated on the complete absence of statutory authority for any verdict sheet annotations. See e.g., People v. Owens, 69 N.Y.2d 585, 591-92 (1987). As a result of the bill, there will be such authority and thus any erroneous verdict sheet notations will be subject to harmless error analysis, consistent with subdivision 1 of section 470.05 of the [CPL]*" (Governor's Approval Mem, Bill Jacket, L 1996, ch 630, at 7, 8-9, 1996 McKinney's Session Laws of NY, at 1908-1909 [emphasis added]).

The majority dismisses the Approval Memorandum's reasoning as "too attenuated to justify rejecting" the holdings of *Spivey* and *People v Damiano* (87 NY2d 477 [1996]) "on the harmless error issue" (majority op at 709), as though the Governor's statements were some species of post-enactment "spin" or propaganda. But the Governor was explaining *his* bill, drafted by *his* lawyers at *his* direction to carry out *his* policy. And the Legislature agreed with him: both houses enacted the Governor's Program Bill, without amendment, pursuant to messages of necessity, the same day it was introduced. Under these circumstances, the Governor's view of section 2, which is perfectly consonant with the amendment's language, should be dispositive.

The majority also comments that the Legislature might have used language similar to "the language that it adopted in another context, to overrule our holding in *People v Ranghelle* (69 NY2d 56, 63 [1986])" by saying that "a failure to deliver *Rosario* material to defense counsel . . . does not justify reversal 'in the absence of a showing . . . that there is a reasonable possibility that the non-disclosure materially contributed to the result' " (majority op at 709, quoting CPL 240.75). Indeed the Legislature might have done this, but only if it wanted a rule other than CPL 470.05, the general rule for harmless error analysis, to govern annotation errors on verdict sheets.

Here, the evidence of defendant's guilt was overwhelming, a conclusion with which I doubt the majority disagrees. Defendant was indicted for murder and other, lesser charges for the shootings of his estranged girlfriend and her ex-boyfriend, the father of her child, as they sat in a car parked outside her home. She died as a consequence, while her ex-boyfriend sustained serious injuries. He testified that defendant, whom he knew, was the shooter, and his account was corroborated by a neighbor who saw and heard the shooting (although she could not identify defendant). In the days following the crime, defendant made many incriminating statements to his friends and family. And while the absence of expert testimony was not fatal to his defense of extreme emotional disturbance, defendant did not testify either. As a result, there was essentially no proof that he suffered from a mental infirmity manifested by a loss of self-control. In other words, it was, to say the least, generous of the trial judge to allow the jury to consider the defense on these facts in the first place. As to intent, defendant fired multiple shots into the occupied car at point-blank range.

In sum, the evidence to support extreme emotional distur-
bance or a finding that defendant merely intended to seriously
injure his victims was so weak that the verdict sheet annota-
tions—which, in fact, supplied the jury with correct statements
of the law—cannot have affected the outcome. A decision to set
aside a conviction under such circumstances is exactly the kind
of "hyper-technical" result that the Legislature sought to fore-
close when it enacted chapter 630 of the Laws of 1996.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO and
JONES concur with Judge SMITH; Judge READ dissents in a sepa-
rate opinion in which Judge PIGOTT concurs.

Order affirmed.