■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANTHONY LEWIS, Appellant. [958 NYS2d 348]—

Judgment, Supreme Court, New York County (Maxwell T. Wiley, J.), rendered July 30, 2009, as amended May 10, 2011, convicting defendant, after a jury trial, of grand larceny in the third degree (two counts), grand larceny in the fourth degree (three counts), criminal possession of a forged instrument in the second degree (eight counts), identity theft in the first degree (five counts), scheme to defraud in the first degree and criminal possession of forgery devices, and sentencing him to an aggregate term of $9^1/_3$ to 28 years, unanimously affirmed.

During the investigation, the police, without obtaining a warrant, attached a global positioning system (GPS) to defendant's car that provided defendant's location at the moment information was requested. This case was tried a few weeks before the Court of Appeals decided *People v Weaver* (12 NY3d 433 [2009]), which deals with the legality, under the New York Constitution, of prolonged warrantless use of GPS devices.

Defendant argues that the trial court should have granted his motion to set aside the verdict, at least to the extent of granting a suppression hearing regarding evidence derived from the use of the GPS device. In the alternative, he argues that his attorney rendered ineffective assistance by failing to preserve the issue of the constitutionality of the GPS surveillance.

We conclude that the very limited GPS surveillance in this

case was permissible under *Weaver*. The device was attached to defendant's car for approximately three weeks, and was functional for only two of them. Unlike the sophisticated device in *Weaver*, which permitted the police to record all manner of information and to retrieve stored information, it did not track defendant continuously. Rather, reports indicate that the device was only accessed by the police on two days to enhance their visual surveillance.

In any event, regardless of whether the surveillance violated state law, or whether the mere attachment of a GPS device to defendant's car violated federal constitutional law (*see United States v Jones*, 565 US —, 132 S Ct 945 [2012]), we find any error to be harmless (*see People v Crimmins*, 36 NY2d 230 [1975]). Evidence derived from the use of the GPS device played a minimal role in the prosecution's overwhelming case. The device was mentioned during testimony at trial in connection with surveillance relating to one day. As to that day, a detective testified that he did not rely solely on the GPS to locate defendant. Other evidence also established defendant's involvement in the crimes at the various stores to which the police followed him, including the testimony of various employees and surveillance tapes, which would not be suppressible as the fruit of the warrantless use of a GPS device (*see People v Mendez*, 28 NY2d 94, 100 [1971], *cert denied* 404 US 911 [1971]). Accordingly, regardless of whether defendant's attorney should have made a timely challenge to the GPS-derived evidence, defendant has not established that he was prejudiced by that omission (*see Strickland v Washington*, 466 US 668, 694 [1984]; *see also People v Benevento*, 91 NY2d 708, 714 [1998]). Furthermore, an attorney is not ineffective for failing to anticipate a change in the law (*see People v Sanchez*, 76 AD3d 122, 130 [1st Dept 2010], *lv denied* 15 NY3d 855 [2010]; *People v Brisson*, 68 AD3d 1544, 1547 [3d Dept 2009], *lv denied* 14 NY3d 798 [2010]).

Defendant asserts that his grand larceny convictions were against the weight of the evidence. Defendant argues that, as to each of these counts, the evidence failed to establish a larceny from the particular bank or merchant designated as the victim.

This Court "is constrained to weigh the evidence in light of the elements of the crime as charged without objection by defendant" (*People v Noble*, 86 NY2d 814, 815 [1995]). Viewing the evidence in light of the charge, we find that the verdicts at issue were not against the weight of the evidence (*see People v Danielson*, 9 NY3d 342, 348-349 [2007]). To the extent defendant is also claiming that the evidence was legally insufficient to establish his guilt beyond a reasonable doubt, thereby violating

his right to due process, or is challenging the court's jury instructions, we find those claims to be unpreserved, and we decline to review them in the interest of justice. As an alternative holding, we find no basis for reversal.

Defendant argues that the court violated his constitutional rights by denying his objections to wearing jail-issued orange shoes at trial. Preliminarily, defendant has not preserved his claim that the shoes impinged on his right to testify and we decline to review it in the interest of justice. When the court asked defendant if he intended to testify, he simply declined. Defendant did not alert the court to his alleged reason for not testifying until deliberations had already commenced (*see People v Narayan*, 54 NY2d 106, 113 [1981]).

The remainder of this claim is without merit. The court stated its belief that the jurors could not see defendant's footwear from the jury box, and neither defense counsel nor defendant contradicted this assertion. The court also directed counsel to position his briefcase so as to block the jury's view, and noted on another occasion that boxes and a cart blocked the jury's view. Defendant was otherwise dressed in civilian clothing and the court observed that the shoes did not have prison markings, but looked like slip-on Converse sneakers, although not as nice (*see People v Johnston*, 43 AD3d 1273 [4th Dept 2007], *lv denied* 9 NY3d 1007 [2007]; *People v Oliveri*, 29 AD3d 330, 332 [1st Dept 2006], *lv denied* 7 NY3d 760 [2006]). Moreover, the court twice offered to sign orders to compel the Department of Corrections to permit defendant to wear his own shoes, but defendant never followed through on the court's attempt to remedy the problem. Nor did defendant seek an alternative means of obtaining non-prison shoes, such as having a family member bring a pair of shoes to the courtroom.

Defendant's argument that the verdict sheet did not comport with the requirements of CPL 310.20 (2) because the court listed crime locations (the stores), rather than the victims (the banks and cardholders), with respect to certain counts is without merit. CPL 310.20 (2) provides in relevant part: "Whenever the court submits two or more counts charging offenses set forth in the same article of the law, the court may set forth the dates, names of complainants or specific statutory language, without defining the terms, by which the counts may be distinguished; provided, however, that the court shall instruct the jury in its charge that the sole purpose of the notations is to distinguish between the counts."

In *People v Miller* (18 NY3d 704, 706 [2012]), the Court of Appeals held that in a criminal case, "[n]othing of substance

can be included [in the verdict sheet] that the statute does not authorize." The names of the stores are neither "statutory text" nor "element[s] of the crimes charged" and simply distinguished the various counts from each other (*see People v McCallum*, 96 AD3d 1638, 1640 [4th Dept 2012] [internal quotation marks omitted]; *People v Evans*, 259 AD2d 629 [2d Dept 1999], *lv denied* 93 NY2d 924 [1999]).

The stores were proxies for the complainants in that they are victims of defendant's fraudulent use of the credit cards, even if they do not bear the ultimate loss. The larceny statute does not define the crime with respect to a specific "victim," but instead requires proof that property was wrongfully taken from its "owner," meaning anyone with rights superior to those of the taker (*see* Penal Law §§ 155.00 [5]; 155.05 [1]). Defendant used the forged cards to obtain goods that he did not intend to pay for from the stores. Even though the stores may have been reimbursed by the bank, they nonetheless were affected by defendant's conduct. This interpretation of the statute is consistent with the legislative intent of the amendments to CPL 310.20 (2) (*see e.g.* Mem of Off of Ct Admin No. 64, 2002 NY Legis Ann at 338-339 [amendment allows a court to "include on the verdict sheet relevant information to assist the jury in distinguishing among the counts" and ensures that "juries would receive the information they need to distinguish among multiple counts in a broader array of cases"]).

We perceive no basis for reducing the sentence. To the extent defendant is arguing that he is entitled to an unspecified reduction as a matter of law, that argument is without merit.

We have considered and rejected defendant's remaining claims. Concur—Andrias, J.P., Friedman, Moskowitz, Freedman and Manzanet-Daniels, JJ.