[12 NE3d 1091, 989 NYS2d 661]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANTHONY LEWIS, Appellant.

Argued February 12, 2014; decided May 1, 2014

**POINTS OF COUNSEL**

*Robert S. Dean, Center for Appellate Litigation*, New York City (*Susan H. Salomon* of counsel), for appellant. I. The trial court violated CPL 310.20 (2) and thereby committed reversible

error by submitting a verdict form that, for the overwhelming majority of counts, listed alleged crime locations, not complainants. (*People v Miller*, 18 NY3d 704; *People v Laing*, 79 NY2d 166; *People v Owusu*, 93 NY2d 398; *Matter of Alonzo M. v New York City Dept. of Probation*, 72 NY2d 662; *People v Martinez*, 83 NY2d 26; *People v Grega*, 72 NY2d 489; *People v Spann*, 56 NY2d 469; *People v Rodriguez*, 17 NY3d 486; *People v Bailey*, 13 NY3d 67; *People v Baghai-Kermani*, 84 NY2d 525.) II. The trial court's rulings and counsel's inaction wrongly denied appellant the opportunity to challenge the prosecution's warrantless installation of a GPS tracking device on his car, conduct that violated *People v Weaver* (12 NY3d 433 [2009])—a decision that was pending prior to and during his trial—and conduct about which appellant himself pressed counsel (and the court) prior to trial. (*People v Benevento*, 91 NY2d 708; *People v Baldi*, 54 NY2d 137; *Strickland v Washington*, 466 US 668; *People v Turner*, 5 NY3d 476; *People v Baker*, 14 NY3d 266; *People v Kneitel*, 33 AD3d 816; *People v Jean-Baptiste*, 11 NY3d 539; *Mountain View Coach Lines v Storms*, 102 AD2d 663; *People v Martello*, 93 NY2d 645; *Griffith v Kentucky*, 479 US 314.) III. The Appellate Division failed to properly conduct a weight-of-evidence review of appellant's challenges to his larceny convictions. (*People v Noble*, 86 NY2d 814; *People v Danielson*, 9 NY3d 342; *People v Johnson*, 10 NY3d 875; *People v Dekle*, 56 NY2d 835; *People v Dlugash*, 41 NY2d 725; *People v Malagon*, 50 NY2d 954; *People v Esquilin*, 37 AD3d 197; *People v Chavis*, 91 NY2d 500; *People v Ford*, 11 NY3d 875; *People v Watson*, 284 AD2d 212.) IV. By peremptorily rejecting appellant's requests for a voice-identification expert to challenge the prosecution's case that his voice was on the wiretapped calls, the trial court abused its discretion. (*Washington v Texas*, 388 US 14; *Ake v Oklahoma*, 470 US 68; *People v Hatterson*, 63 AD2d 736; *People v Drumgoole*, 234 AD2d 888; *People v Tyson*, 209 AD2d 354; *People v Jeter*, 80 NY2d 818; *People v Cronin*, 60 NY2d 430; *People v Williams*, 160 AD2d 754.) V. Appellant's sentence violated his due process, jury trial, and proportionate punishment rights, and otherwise constituted an abuse of discretion as a matter of law. (*People v Naranjo*, 89 NY2d 1047; *United States v Quintieri*, 306 F3d 1217; *People v Pena*, 50 NY2d 400; *People v Jones*, 39 NY2d 694; *People v Slobodan*, 67 AD2d 630; *People v Williams*, 46 AD2d 783; *People v Schonfeld*, 68 AD3d 449; *People v Rodwin*, 283 AD2d 242; *People v Maryea*, 157 AD2d 605; *People v LaSalle*, 95 NY2d 827.)

*Cyrus R. Vance, Jr., District Attorney*, New York City (*Martin J. Foncello, Susan Axelrod* and *Alan Gadlin* of counsel), for

respondent. I. The verdict sheet submitted by the trial court was proper. (*Parochial Bus Sys. v Board of Educ. of City of N.Y.*, 60 NY2d 539; *Lawrence Constr. Corp. v State of New York*, 293 NY 634; *People v Mitchell*, 77 NY2d 624; *Rangolan v County of Nassau*, 96 NY2d 42; *People v Hemmings*, 2 NY3d 1; *People v Olivo*, 52 NY2d 309; *People v Alamo*, 34 NY2d 453; *People v Fuentes*, 52 AD3d 1297; *People v Cepeda*, 29 AD3d 491; *People v Yakubova*, 11 AD3d 644.) II. Trial counsel was not ineffective for failing to object to the introduction of testimony about the use of a global positioning system (GPS) to locate defendant's car, and the court correctly denied his motion to set aside the verdict due to the introduction of evidence from the GPS. (*People v Weaver*, 12 NY3d 433; *People v Jones*, 55 NY2d 771; *People v Satterfield*, 66 NY2d 796; *People v Brown*, 45 NY2d 852; *People v Love*, 57 NY2d 998; *Strickland v Washington*, 466 US 668; *People v Taylor*, 1 NY3d 174; *People v Benevento*, 91 NY2d 708; *People v Henry*, 95 NY2d 563; *People v Caban*, 5 NY3d 143.) III. The First Department properly evaluated the weight of the evidence supporting defendant's convictions of five counts of grand larceny. (*People v Johnson*, 10 NY3d 875; *People v Danielson*, 9 NY3d 342; *People v Bleakley*, 69 NY2d 490; *People v Noble*, 86 NY2d 814; *People v Norman*, 85 NY2d 609; *People v Olivo*, 52 NY2d 309; *People v Alamo*, 34 NY2d 453; *People v Carpenito*, 80 NY2d 65; *People v Foster*, 73 NY2d 596.) IV. The trial court properly denied defendant's request for appointment of a voice analysis expert. (*People v Angelo*, 88 NY2d 217; *Ake v Oklahoma*, 470 US 68; *Caldwell v Mississippi*, 472 US 320; *People v Wilkerson*, 94 AD3d 423; *People v Burgess*, 270 AD2d 158; *People v Herrnkind*, 49 AD3d 555; *People v Carpenter*, 240 AD2d 863; *People v Brown*, 67 AD3d 1369; *People v Brand*, 13 AD3d 820; *People v Walker*, 83 NY2d 455; *People v Ventura*, 35 NY2d 654.) V. Defendant can identify no legal error concerning his sentence, which was proper. (*People v Thompson*, 60 NY2d 513; *People v Jones*, 39 NY2d 694; *People v Naranjo*, 89 NY2d 1047; *People v Moore*, 61 NY2d 575; *People v Walker*, 83 NY2d 455; *People v Pena*, 50 NY2d 400; *People v Nieves*, 2 NY3d 310; *Ewing v California*, 538 US 11.)

**OPINION OF THE COURT**

PIGOTT, J.

The issues on this appeal are whether the trial court ran afoul of CPL 310.20 (2) when it submitted to the jury a verdict sheet containing the locations of the designated offenses, and

whether law enforcement's warrantless installation of a global positioning system (GPS) tracking device on defendant's vehicle violated our holding in *People v Weaver* (12 NY3d 433 [2009]) and the holding of the United States Supreme Court in *United States v Jones* (565 US —, 132 S Ct 945 [2012]).

## I

Defendant and two codefendants engaged in a sophisticated scheme to steal property through the use of forged credit cards. They first acquired credit card numbers from legitimate accounts of cardholders who lived in other states. Then, with the aid of a "reader/writer" machine—a device that reads and writes the magnetic strips on credit cards—they placed the stolen information on the strips of blank cards that had been fabricated to look like genuine credit cards bearing the conspirators' names or aliases. With forged cards in hand, defendant and his codefendants made purchases at several stores in Manhattan.

In January 2007, investigators from the New York County District Attorney's Office obtained an eavesdropping warrant allowing them to wiretap two of defendant's cell phones. Via the wiretaps, investigators heard defendant discussing his purchase of the reader/writer machine and his attempts to purchase blank plastic cards for use in creating fake credit cards. Investigators also conducted visual surveillance of defendant, but they found that to be difficult because of Manhattan's traffic congestion. As a result, investigators, without first securing a warrant, placed a battery-operated GPS device on defendant's vehicle. Between March 5 and March 16, 2007, defendant and his codefendants visited various stores and utilized forged credit cards to either purchase or attempt to purchase items with the illegally obtained credit card numbers belonging to individuals from out of state, that had been issued by, among other institutions, HSBC, MasterCard, and Chase Bank. Investigators interviewed store employees and recovered store receipts and surveillance video relative to the transactions.

In May 2007, a grand jury handed down a 61-count indictment against defendant and his codefendants charging them with grand larceny, criminal possession of a forged instrument, criminal possession of stolen property, criminal possession of forgery devices, identity theft and scheme to defraud. In February 2009, approximately one month before trial, the prosecutor provided the defense with copies of the surveillance reports, which disclosed, for the first time, that a GPS tracking device had been placed on defendant's vehicle.

In March 2009, the case proceeded to trial on 26 of the counts. The People presented evidence concerning the myriad of transactions that had taken place during the period in question. The testimony on the People's case-in-chief addressed multiple transactions in numerous stores on different dates involving the use of different credit card numbers, which had been issued by assorted banking institutions and obtained from various individuals throughout the United States.

Prior to summations, the trial court, concerned that the jury would have difficulty distinguishing among the submitted counts, prepared a verdict sheet that listed the count number, the offense charged, the date of the alleged offense, and either the name of the store where the alleged offense occurred or the name of the bank that issued the credit card. Defense counsel objected to the annotations on the verdict sheet to the extent it mentioned locations, amounts and dates. The court explained that it prepared the verdict sheet in conformance with the Criminal Procedure Law, and stated that it would instruct the jury that the notations served the sole purpose of distinguishing one count from another.

In its charge to the jury, the court instructed that the sheet had been formulated for the jury's "guidance" and that "there are some notations [on the sheet] whose only purpose is to remind you of the difference between each of the counts." The jury found defendant guilty on 20 of the 26 counts, namely, two counts of grand larceny in the third degree, three counts of grand larceny in the fourth degree, eight counts of criminal possession of a forged instrument in the second degree, five counts of identity theft in the first degree, and one count each of scheme to defraud in the first degree and criminal possession of forgery devices.

Defendant made a posttrial CPL 330.30 motion asserting, among other things, that the trial court erred in permitting evidence concerning the GPS device placed on defendant's car, relying on this Court's decision in *Weaver*, which had been pending during his trial and was handed down after the jury's verdict. The court summarily denied that motion at sentencing, and defendant was sentenced to 9⅓ to 28 years' imprisonment.

The Appellate Division unanimously affirmed, holding that the investigators' "limited use" of the GPS device was permissible under our holding in *People v Weaver* and, to the extent it violated state or federal constitutional law, any error was harmless

(102 AD3d 505, 505-506 [1st Dept 2013]). It also concluded that because the stores listed on the verdict sheet were "proxies" for the "complainants," the annotations did not run afoul of CPL 310.20 (2) (*id.* at 508). A Judge of this Court granted defendant leave to appeal (20 NY3d 1101 [2013]), and we now affirm.

## II

In *People v Miller* (18 NY3d 704 [2012]), we held that a trial court commits reversible error by providing a jury in a criminal trial with a verdict sheet containing annotations that are not authorized by CPL 310.20 (2) (*id.* at 706). That section provides:

> "Upon retiring to deliberate, the jurors may take with them: . . .
>
> "2. A written list prepared by the court containing the offenses submitted to the jury by the court in its charge and the possible verdicts thereon. Whenever the court submits two or more counts charging offenses set forth in the same article of the law, *the court may set forth the dates, names of complainants or specific statutory language*, without defining the terms, by which the counts may be distinguished; provided, however, that the court shall instruct the jury in its charge that the sole purpose of the notations is to distinguish between the counts" (emphasis supplied).

Subdivision (2) had originally included only the first sentence, and was amended in 1996 to grant trial courts the authority to include annotations concerning "the dates, names of complainants or specific statutory language" to "facilitate an orderly and intelligent deliberative process and prevent needless reversals of convictions" (Governor's Approval Mem, Bill Jacket, L 1996, ch 630 at 9, 1996 NY Legis Ann at 453).

Defendant, relying on *Miller*, claims that the trial court committed reversible error by submitting the annotated verdict sheet to the jury, and challenges 15 out of the 20 counts of which defendant was convicted. According to defendant's reading, because the verdict sheet contained references to the locations of the offenses and names of the issuing banks (as opposed to the names of the individuals whose card numbers had been stolen), he is entitled to a new trial because that information does not fall within the categories specified in section 310.20 (2). We disagree.

As we explained in *Miller* "[n]othing *of substance* can be included [on a verdict sheet] that the statute does not authorize" (*Miller*, 18 NY3d at 706 [emphasis supplied]). The verdict sheet in *Miller* violated section 310.20 (2) because it included a legal instruction relative to burden of proof, i.e., words or terms "of substance" (*id.* at 706-707 [verdict sheet asked the jury if the defendant had established by a preponderance of the evidence that he acted under extreme emotional disturbance]). Verdict sheets may not be utilized to provide legal instruction to a deliberating jury; such instruction is to be provided by the trial court in its jury charge (*see* CPL 310.30 [stating that during deliberations "the jury may request the court for further instruction or information with respect to the law" and the court, upon notice to and in the presence of the People and the defense, "must give such requested information or instruction as the court deems proper"]). Inclusion of legal instructions on a verdict sheet runs contrary to the statute's intended purpose of "facilitat[ing] an orderly and intelligent deliberative process" because it enhances the risk that the jurors will perceive the annotation as having special significance as opposed to merely assisting them in distinguishing among the counts.

■ The annotations here could not have been interpreted by the jury as being intended for any purpose other than identifying the individual stores defendant and his codefendants were alleged to have frequented or the banks relative to certain identity theft counts. Given the number of counts, coupled with the fact that the offenses occurred at different locations at different times (and, in some instances, on different dates), the trial court appropriately included the annotations so that the jury could distinguish the submitted counts. Under the circumstances, the names of the stores clearly fall within the term "complainant" delineated in the statute. Affording section 310.20 (2) the narrow interpretation defendant advocates would unnecessarily restrict trial courts from providing clarification on a verdict sheet in cases like this one where there are multiple counts of identical offenses alleging similar conduct over a period of time. The danger against which the statute guards—that the jurors will "tak[e] on the role as Judges of the law" (*People v Moore*, 71 NY2d 684, 688 [1988])—is not presented here.

### III

■ Contrary to the People's contention, defendant's objection to the warrantless installation of the GPS tracking device was

adequately preserved at trial.[1] Prior to trial, the People disclosed surveillance reports that, for the first time, indicated that investigators had attached the GPS device to defendant's car and used it to track defendant on a number of occasions. Defendant apprised the court, through counsel, that upon reviewing the surveillance reports he discovered that the investigators had attached a GPS device to his car, and asked if the court would consider a motion concerning its use. The court, believing that the request was one to suppress the GPS technology relative to the eavesdropping warrant, stated that it was "likely" that the court had issued a ruling already.[2] Defendant told the court that it had not issued a ruling relative to the GPS device, and the court responded that it was "possible" that defendant was correct. Defendant was, in fact, correct that the court had not made a ruling concerning the use of the GPS device, and twice asserted as such, but the court refused to consider defendant's argument.

In any event, prior to summations, defendant, referring to *People v Weaver*, asked the court if it was "aware of the Court of Appeals case currently pending with respect to the usability of tracking devices."[3] Although the court responded that it was aware of that case, when counsel attempted to make a motion with regard to that issue (*see* CPL 710.60 [5]), the court interrupted him and summoned the jury. The record thus indicates that the court was on notice of defendant's argument under *Weaver* and tacitly denied it. The Appellate Division found the objection sufficiently preserved to reach the merits; however, it erroneously concluded that law enforcement's "very limited GPS surveillance . . . was permissible" under our holding in *Weaver* (102 AD3d at 505-506).

Under *Weaver* and the United States Supreme Court's subsequent holding in *United States v Jones*, the use of a GPS device to monitor a vehicle's movements constitutes a search

---

**1.** Having reached this conclusion, we need not address defendant's contention that he was deprived of the effective assistance of counsel for not challenging the admission of the GPS-derived evidence.

**2.** It is undisputed that the eavesdropping warrants to which the court was referring dealt with GPS information obtained from defendant's cell phones.

**3.** On June 5, 2008, the Appellate Division, Third Department, upheld the warrantless use of a GPS device (52 AD3d 138 [3d Dept 2008]). Defendant was granted leave to appeal to this Court on July 22, 2008 (10 NY3d 966 [2008]) and we reversed the order of the Appellate Division on May 12, 2009 (12 NY3d 433 [2009]).

under our State and Federal Constitutions (*see Weaver*, 12 NY3d at 445-447; *see also United States v Jones*, 565 US at —, 132 S Ct at 949). The Appellate Division sought to distinguish *Weaver* by pointing out that the device was attached to the car for only three weeks (and functional for only two), and that investigators accessed the GPS device on only two days. We do not need to consider whether these facts suffice to distinguish *Weaver*, because under the Supreme Court's holding in *Jones* the attachment of the GPS device to defendant's vehicle was unquestionably a search within the meaning of the Fourth Amendment. Although *Jones* and *Weaver* had not yet been decided at the time of defendant's trial, "cases on direct appeal are generally decided in accordance with the law as it exists at the time the appellate decision is made" (*People v Jean-Baptiste*, 11 NY3d 539, 542 [2008] [citation omitted]). When the police want to place a GPS device on a suspect's automobile, they must obtain a warrant first.

■ We conclude, however, that this violation of defendant's constitutional right was harmless beyond a reasonable doubt because "there is no reasonable possibility that the error might have contributed to defendant's conviction" (*People v Crimmins*, 36 NY2d 230, 237 [1975], citing *Chapman v California*, 386 US 18 [1967], *reh denied* 386 US 987 [1967], and *Fahy v Connecticut*, 375 US 85 [1963]). There was one date on which the use of the GPS device allegedly led to evidence of defendant's criminal activity. Although the GPS device was attached to the car on that date, investigators learned from another source—wiretapped phone calls obtained through an eavesdropping warrant—that defendants were heading toward a Best Buy store at 86th Street and Lexington Avenue in Manhattan. Once investigators located defendant and his cohorts at this store, they conducted visual surveillance as defendant and/or his codefendants made purchases at a jewelry store and another Best Buy at 44th Street and 5th Avenue, which was near the jewelry store. Given the information investigators obtained from the wiretap, the use of the GPS device, although amounting to a constitutional violation, was nonetheless harmless because it provided information redundant to that which investigators had already obtained legally. The People also presented overwhelming evidence of defendant's guilt in the form of surveillance video, sales receipts, visual observations by investigators of codefendants making purchases at the named stores, interviews of store employees conducted by investigators, and recorded conversations obtained via the eavesdropping warrant.

Finally, we have considered defendant's remaining arguments and conclude that they are without merit.

Accordingly, the order of the Appellate Division should be affirmed.

GRAFFEO, J. (concurring). The majority believes that defendant adequately preserved a constitutional challenge to the evidence obtained from the global positioning system (GPS) tracking device. Not only do I disagree with that holding, but defendant does as well—he asserts that his trial attorney inexcusably failed to seek suppression. Consequently, I would analyze the GPS issue in the context of an ineffective assistance of counsel framework. Before trial, the People provided the defense with documents revealing that a GPS device had been attached to defendant's automobile and was used to track his location at specified times and locations. Once alerted to these facts, defendant urged his attorney to inquire if the court would "entertain" a pretrial motion to suppress the GPS evidence. When defense counsel posed the issue, the court responded that it believed it had already ruled on the request, but that it would consider the application if "something specific" was raised and the issue would be reviewed "at that time." Defense counsel, however, did not pursue or file a motion. At the subsequent trial, the People presented the GPS evidence.

Before summations, defendant asked the court if it was aware of a GPS case that was pending at our Court, entitled *People v Weaver* (52 AD3d 138 [3d Dept 2008], *lv granted* 10 NY3d 966 [2008]). The judge indicated that he knew of the case but did not engage in further discussion. Approximately two weeks after the verdict in defendant's case, but prior to his sentencing, we issued the decision in *People v Weaver* (12 NY3d 433 [2009]). Defense counsel then moved to set aside defendant's conviction under CPL 330.30, claiming that the People should not have been allowed to use evidence derived from the GPS unit because it had not been authorized by a search warrant. Supreme Court denied the motion.

On these facts, the GPS issue clearly was not adequately preserved (*see* CPL 470.05 [2]). Except under unusual circumstances not present in this case, a motion to suppress evidence must be made before trial (*see* CPL 710.40) and is to be submitted in writing (*see* CPL 710.60 [1]). Because the suppression motion was not timely or properly presented to the trial court, it cannot be faulted for refusing to consider the issue. Defendant's counsel did not comply with the court's request for a

pretrial motion and the issue was not raised again until after the GPS evidence had been offered into evidence (*see* CPL 710.40 [2], [4]). Neither defendant's oral application made immediately prior to summations nor his postverdict CPL 330.30 motion could be used to belatedly raise this issue (*see e.g. People v Hines,* 97 NY2d 56, 61-62 [2001]; *cf.* majority op at 188).[1]

Recognizing the untimeliness of the suppression request, defendant now asks us to determine that his trial attorney was ineffective for failing to properly submit his suppression challenge to the GPS evidence. Although the record in this case supports the procedural course charted by defendant on this appeal, I do not believe that defendant has satisfied his burden of establishing that counsel's performance was objectively unreasonable (*see generally People v Brown,* 17 NY3d 742, 744 [2011]; *People v Baker,* 14 NY3d 266, 270-271 [2010]). At the time the suppression motion should have been made, the trial court would have been bound by the Third Department's ruling in *Weaver,* which held that the use of a GPS device by law enforcement was not subject to a warrant requirement (*see* 52 AD3d at 142-143). We did not overturn that determination until after the jury in this case rendered its verdict.[2] Of course, the fact that the GPS issue had not yet been definitively resolved as a matter of New York or federal law may weigh in defendant's favor—the lack of a suppression motion impeded his ability to raise the issue on appeal even though he would have been entitled to rely on any advantageous decisions that occurred while his direct appeal unfolded (*compare People v Nesbitt,* 20 NY3d 1080, 1082 [2013], *with People v Feliciano,* 17 NY3d 14, 28 [2011]).

---

1. Citing CPL 710.60 (5), the majority evidently believes that the presummation oral application timely presented the GPS issue. This position is inconsistent with the relevant provisions of article 710 of the Criminal Procedure Law. In general, a motion to suppress must be served or filed within 45 days after arraignment unless the court specifies a different time frame (*see* CPL 710.40 [1], citing CPL 255.20 [1]). A motion to suppress at a later point in a criminal proceeding—"during trial" (CPL 710.60 [5]), for example—is permitted "when, owing to unawareness of facts constituting the basis thereof or to other factors, the defendant did not have reasonable opportunity to make the motion previously" (CPL 710.40 [2]). This exception is inapplicable since the defense was clearly alerted to raise this issue in an appropriate suppression motion. Section 710.60 (5), therefore, has no bearing on this case and the fact that "[t]he Appellate Division found the objection sufficiently preserved" (majority op at 188) is not determinative (*see People v Davidson,* 98 NY2d 738, 739-740 [2002]).

2. *See also Matter of Cunningham v New York State Dept. of Labor* (21 NY3d 515, 520 [2013]); *United States v Jones* (565 US —, 132 S Ct 945 [2012]).

Ultimately, however, defendant's ineffectiveness argument fails because he has not demonstrated that trial counsel's inaction prejudiced him or deprived him of meaningful representation in the context of the entire case (*see generally People v Heidgen*, 22 NY3d 259, 278-279 [2013]). As the majority correctly observes, the GPS evidence was quite limited in terms of factual disclosures and otherwise similar to proof that had been legally obtained. For example, aside from the GPS evidence, defendant's guilt was overwhelmingly established by surveillance videos, extensive visual observations by investigators, numerous recorded telephone conversations, statements from store employees and the discovery in a codefendant's residence of a machine that created counterfeit credit cards. Therefore, trial counsel's failure to properly seek suppression of the GPS evidence did not deprive defendant of meaningful legal assistance.[3] For these reasons, I would affirm the order of the Appellate Division.

Chief Judge LIPPMAN and Judges SMITH and RIVERA concur; Judge GRAFFEO concurs in an opinion in which Judges READ and ABDUS-SALAAM concur.

Order affirmed.

---

**3.** I agree with the majority that the verdict sheet did not violate CPL 310.20 (2) and that defendant's other contentions are meritless.