■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DEVIN GRAY, Appellant. [57 NYS3d 561]—

---

Egan Jr., J. Appeal from a judgment of the County Court of Ulster County (Williams, J.), rendered February 27, 2015, upon a verdict convicting defendant of the crimes of criminal possession of a weapon in the second degree and reckless endangerment in the second degree.

In June 2014, defendant was indicted and charged with criminal possession of a weapon in the second degree (three counts) and reckless endangerment in the first degree.[1] The charges stemmed from an incident that occurred during the early morning hours of June 3, 2014 outside of an apartment complex located in the City of Kingston, Ulster County wherein defendant, who was armed with a loaded 9 millimeter rifle, and another individual, Eric Harris, who was armed with a loaded 12-gauge shotgun, met up and exchanged gunfire. Defendant, who was the only person injured during this exchange, was taken to a local hospital and treated for gunshot wounds to his abdominal region. While there, a police officer collected defendant's personal effects, including three rounds of ammunition.

Following a jury trial, defendant was convicted of one count of criminal possession of a weapon in the second degree and one count of reckless endangerment in the second degree (as a lesser included offense). County Court thereafter sentenced defendant to an aggregate prison term of 15 years followed by five years of postrelease supervision. Defendant now appeals.

Defendant initially contends that County Court erred in denying his motion to suppress certain physical evidence— namely, the rifle and ammunition seized from an apartment near the scene of the shooting (where his cousin and the mother of his cousin's child resided) and the three rounds of ammunition collected at the hospital. With respect to the rifle and ammunition located in the subject apartment, inasmuch as "defendant was no more than a casual visitor having 'relatively tenuous ties' to the [apartment]" occupied by his cousin and the mother of his cousin's child (*People v Pope*, 113 AD3d 1121, 1122 [2014], *lv denied* 23 NY3d 1041 [2014], quoting *People v*

---

1. The indictment was amended at defendant's arraignment to reflect that count 3 thereof should have charged defendant with one count of criminal possession of a weapon in the third degree.

*Ortiz*, 83 NY2d 840, 842 [1994]),[2] we agree with County Court that defendant lacked standing to challenge the seizure of those items (*see People v Shire*, 77 AD3d 1358, 1359-1360 [2010], *lv denied* 15 NY3d 955 [2010]; *People v Gonzalez*, 45 AD3d 696, 696 [2007], *lv denied* 10 NY3d 811 [2008]). In any event, defendant's argument on this point lacks merit because one of the occupants informed the police that there was a firearm in her apartment that did not belong to her, granted the police permission to enter the apartment "to check for it" and the rifle and ammunition were in plain view (*see People v Fayton*, 276 AD2d 339, 339-340 [2000], *lv denied* 95 NY2d 963 [2000]; *People v Figueroa*, 267 AD2d 183, 183 [1999], *lv denied* 94 NY2d 919 [2000]; *People v Maye*, 206 AD2d 755, 756-757 [1994], *lv denied* 84 NY2d 1035 [1995]).[3] As for the ammunition collected with defendant's clothing at the hospital, even assuming, without deciding, that County Court erred in denying defendant's motion to suppress, we find this error—though constitutional in dimension—to be harmless beyond a reasonable doubt, as "there is no reasonable possibility that the error might have contributed to defendant's conviction" (*People v Crimmins*, 36 NY2d 230, 237 [1975]; *see People v Lewis*, 23 NY3d 179, 189 [2014]).

Turning to the evidence adduced at trial, defendant's present challenge to the legal sufficiency of the evidence—namely, that the subject firearm was not a semiautomatic weapon—was not preserved for our review, as defendant did not raise this specific ground in the context of his motion for a trial order of dismissal. "Nevertheless, our weight of the evidence review necessarily involves an evaluation of whether all elements of the charged crimes were proven beyond a reasonable doubt" (*People v Newell*, 148 AD3d 1216, 1220 [2017] [internal quotation marks and citations omitted], *lv denied* 29 NY3d 1035 [May 25, 2017]). Insofar as is relevant here, "[a] person is guilty of criminal possession of a weapon in the second degree when . . . such person possesses any loaded firearm" outside of his or her home or place of business (Penal Law § 265.03 [3]). A "loaded firearm" includes "any firearm loaded with ammunition or any firearm which is possessed by one who, at the same time, possesses a quantity of ammunition which may be used

---

2. Indeed, defendant's cousin testified at trial that he and the mother of his child had just moved into the apartment on June 2, 2014 and that defendant had been in and out of the apartment only briefly in the hours leading up to the shooting.

3. Defendant's pro se claim—that he denied his right of confrontation due to the fact that the mother of his cousin's child did not testify at the suppression hearing—is unpreserved for our review.

to discharge such firearm" (Penal Law § 265.00 [15]). A "firearm" includes, among other things, "an assault weapon" (Penal Law § 265.00 [3] [e]), which is defined—in relevant part—as "a semiautomatic rifle that has an ability to accept a detachable magazine and has . . . a pistol grip that protrudes conspicuously beneath the action of the weapon" (Penal Law § 265.00 [22] [a] [ii]).[4] "Semiautomatic," in turn, "means any repeating rifle, shotgun or pistol, regardless of barrel or overall length, which utilizes a portion of the energy of a firing cartridge or shell to extract the fired cartridge case or spent shell and chamber the next round, and which requires a separate pull of the trigger to fire each cartridge or shell" (Penal Law § 265.00 [21]). Finally, "[a] person is guilty of reckless endangerment in the second degree when he [or she] recklessly engages in conduct which creates a substantial risk of serious physical injury to another person" (Penal Law § 120.20).

Here, the testimony at trial revealed that defendant and Harris exchanged words in the hours leading up to the shooting and ultimately encountered one another near the entrance to the apartment complex, at which point—multiple witnesses testified—defendant was armed with a rifle and Harris was armed with a shotgun. The war of words continued, during the course of which defendant waved his rifle around—variously pointing the weapon in the direction of at least three individuals. When defendant's cousin approached Harris and attempted to de-escalate the situation, Harris purportedly said, "I don't give a f. . . . It's just a BB gun." In response, defendant reportedly said, "[Y]ou think this is a BB gun?," and thereafter fired his weapon. Harris then returned fire, and defendant ran into his cousin's nearby apartment. Although the People's witnesses were not in universal agreement as to the number of shots fired (either in total or by defendant), there is no dispute that defendant fired at least one round from his rifle, and a spent rifle casing and two spent shotgun shells were recovered at the scene. Accordingly, there is no question that defendant was armed with and did in fact fire his rifle—at least once—on the night in question.

In addition to the foregoing, defendant readily concedes that the subject firearm was operable, was capable of accepting a detachable magazine and had an extended pistol grip (see Penal Law § 265.00 [22] [a] [ii])—facts that also were confirmed

---

4.  Excluded from the definition of an assault weapon is "any rifle, shotgun or pistol that (A) is manually operated by bolt, pump, lever or slide action; (B) has been rendered permanently inoperable; or (C) is an antique firearm" as defined under the United States Code (Penal Law § 265.00 [22] [g] [i]).

through the testimony of Michael Powers, a detective with the Kingston Police Department, Andrew Zell, the lead firearms instructor for the Kingston Police Department, and Michael D'Allaird, a firearms expert employed by the State Police. Defendant nonetheless contends, however, that the rifle in question did not meet the statutory definition of an assault weapon because it was not a "semiautomatic rifle" (Penal Law § 265.00 [22] [a]). Specifically, defendant argues that the rifle was not a "repeating rifle" that "utilize[d] a portion of the energy of [the] firing cartridge . . . to extract the fired cartridge case . . . and chamber the next round, and which require[d] a separate pull of the trigger to fire each cartridge" (Penal Law § 265.00 [21]).

Contrary to defendant's assertion, the term "repeating rifle," which appears in the portion of the statute defining the term "semiautomatic" (*see* Penal Law § 265.00 [21]), refers to the weapon's design and capabilities—not the specific manner in which it was operated at a particular point in time. Thus, the mere fact that defendant may have only fired one round from his rifle on the morning in question neither precludes nor negates a finding that the subject firearm was a "repeating rifle" within the meaning of Penal Law § 265.00 (21). Stated another way, nothing on the face of the statute requires that a weapon be fired multiple times in order to qualify as a repeating rifle, shotgun or pistol. Similarly, although the testimony revealed that the rifle's magazine was broken and inoperable at the time of the shooting, again, the statute only requires that the weapon "has an ability to accept a detachable magazine" (Penal Law § 265.00 [22] [a])—not that such magazine be utilized each and every time that the weapon is fired. Finally, although defendant makes much of the fact that a spring was a component of the process by which new rounds were chambered in the weapon, the presence of the spring in the magazine does not take defendant's rifle outside of the definition of a semiautomatic rifle. In this regard, both Powers and D'Allaird testified that defendant's rifle was a "self feed[ing]" or "automatically fed weapon," meaning that "once it's loaded it will fire as long as the trigger is pulled." D'Allaird further clarified that, in order to fire multiple rounds, one would "have to release and squeeze the trigger again and again and again. One trigger, one round." As to the precise manner in which each round was advanced, Zell explained, "[A]s the trigger is pulled and the projectile goes down through the barrel, the gases will then lock the bolt to the rear forcing . . . the spent casing to eject through the ejection port, which then locks the bolt[ ] to the rear, which then the magazine with a spring in it allows pressure for the bolt to go forward and inject another round into the weapon."

From Zell's and D'Allaird's testimony, it is clear that defendant's rifle "utilize[d] a portion of the energy of [the] firing cartridge . . . to extract the fired cartridge case . . . and chamber the next round" and, further, "require[d] a separate pull of the trigger to fire each cartridge" (Penal Law § 265.00 [21]), which places such rifle squarely within the definition of a semiautomatic/repeating rifle. Such proof, coupled with the testimony from various witnesses as to the manner in which defendant pointed and discharged his rifle and the spent 9 millimeter casing recovered from the scene, which was scientifically linked to the casings recovered when defendant's rifle was successfully test-fired, established—beyond a reasonable doubt—each of the elements of criminal possession of a weapon in the second degree and reckless endangerment in the second degree. As the jury's verdict is in accord with the weight of the evidence, we discern no basis upon which to disturb it.

Defendant's remaining arguments do not warrant extended discussion. With respect to County Court's charge to the jury, there is no question that County Court charged the jury as to each of the elements of criminal possession of a weapon in the second degree (see Penal Law § 265.03 [3]) and, further, defined the term "assault weapon" (see Penal Law § 265.00 [22] [a] [ii]) in conjunction therewith. Defendant now faults County Court for failing to further define the term "semiautomatic"—one of the terms used to define an assault weapon under Penal Law § 265.00 (22). Although defendant initially requested that County Court follow the Criminal Jury Instructions as to the definition of an assault weapon, when County Court pointed out that such instructions did not comport with the current law and asked defense counsel for a specific request to charge, defense counsel stated, "I have no specific request to make, Judge"—indicating that he would leave the matter to the discretion of the court. At the conclusion of the court's charge, defense counsel stated that he had no further requests to charge or exceptions thereto. "[I]nasmuch as defendant did not object to the charge that was given or request different [or additional] language, this issue is unpreserved for our review, and we decline defendant's invitation to set aside the jury's verdict in the interest of justice" (People v Davis, 133 AD3d 911, 914 [2015] [internal quotation marks and citations omitted]). In any event, even "a court's failure to provide requested statutory definitions" does not constitute reversible error in all circumstances (People v Medina, 18 NY3d 98, 104 [2011] [emphasis added]), and, here, we are satisfied that the court's "charge, taken as a whole, conveyed to the jury the correct standard" (People v Gibson, 121 AD3d 1416, 1419 [2014]

[internal quotation marks and citations omitted], *lv denied* 24 NY3d 1119 [2015]).[5]

Finally, we discern no basis upon which to either resentence defendant or modify the sentence imposed in the interest of justice. Although defendant argues that he was denied due process at the time of sentencing because County Court posed certain questions to him during his statement to the court, defendant raised no objection in this regard at the time of sentencing and, therefore, this issue is unpreserved for our review (*cf. People v Wallace*, 29 AD3d 1085, 1085 [2006], *lv denied* 7 NY3d 796 [2006]). More to the point, we do not find that defendant was deprived of his right to make a statement. As to the sentence actually imposed, while defendant indeed received the maximum, "a sentence that falls within the permissible statutory range will not be disturbed unless it can be shown that the sentencing court abused its discretion or that extraordinary circumstances exist warranting a modification in the interest of justice" (*People v Cole*, 150 AD3d 1476, 1482 [2017] [internal quotation marks, brackets and citations omitted]). Here, defendant's sentence fell within the permissible statutory range and, upon taking into account defendant's prior criminal history and actions on the morning in question, which included indiscriminately waving and pointing a loaded firearm at a group of people and thereafter engaging in a gunfight in close proximity to an apartment complex, we find no abuse of discretion or extraordinary circumstances warranting a reduction of the sentence. Defendant's remaining contentions, to the extent not specifically addressed, have been examined and found to be lacking in merit.

Peters, P.J., McCarthy, Devine and Mulvey, JJ., concur. Ordered that the judgment is affirmed.

---

**5.** We note in passing that even the current version of the Criminal Jury Instructions does not expressly require that the term "semiautomatic" be defined—noting only that, when a defendant is charged with possessing an assault weapon, the applicable provisions of Penal Law § 265.00 (22) should be charged (*see* CJI2d[NY] Penal Law § 265.03 [3]; CJI2d[NY] Additional Charges).