(February 20, 1986)

■ In the Matter of ROBERT GUMBRECHT, Respondent, v ROBERT J. McGUIRE, as Police Commissioner of the City of New York, et al., Appellants.—Order, Supreme Court, New York County (Seymour Schwartz, J.), entered September 13, 1984, which granted reargument and upon reargument adhered to the original determination granting petitioner's CPLR article 78 petition and vacating the determination of the Police Pension Fund which retired petitioner on ordinary disability benefits, unanimously modified, on the law, to reverse the original decision and reinstate the Police Pension Fund's determination, without costs. The appeal from the order and judgment (one paper) of the Supreme Court, New York County (Seymour Schwartz, J.), entered on or about September 5, 1984, is dismissed as subsumed in the appeal from the order granting reargument, without costs.

Petitioner Robert Gumbrecht was appointed to the New York Police Department on December 19, 1947 after physical examinations which disclosed no evidence of heart disease. In January 1982, petitioner privately consulted a cardiologist who submitted a report to petitioner's Police District Surgeon which included the diagnosis "rapid atrial fibrillation of unknown etiology". After a further diagnosis of "heart disease, undetermined etiology, atrial fibrillation, left anterior hemiblock and digitalis effect" by a second cardiologist to whom petitioner had been referred by the District Surgeon, the Police Commissioner, on March 22, 1982, requested that petitioner be examined by the Medical Board of the Police Pension Fund to determine his fitness to perform police duty.

After examining petitioner and reviewing his medical file, the Medical Board issued a report on December 13, 1982, which made reference to the prior findings of "atrial fibrillation" and "a left anterior hemiblock with left axis deviation of the QRS complex" and also noted that its own examination of petitioner revealed his "pulse to be 82 and irregular" and that the "entire physical examination including the cardiovascular system is within normal limits except for the irregular pulse". The Board further indicated that it was deferring its decision "until a stress test or Thallium Scan with exercise can be obtained and reviewed". Petitioner underwent such testing, the results of which were contained in a report which concluded that the "treadmill exercise test is negative for electrocardiographic evidence of ischemia". After reviewing the stress test material, the Medical Board issued a final report on

January 31, 1983 in which it noted its agreement with the interpretation of "negative for myocardial ischemia with exercise" and by reason thereof recommended that the request for accident (Heart Bill) disability retirement be disapproved, and that ordinary disability retirement, by reason of the diagnosis of atrial fibrillation, be approved.

The Board of Trustees of the Police Pension Fund considered the case on March 22, 1983, at which time Dr. Clarence Robinson, Supervising Chief Surgeon and consultant to the Trustees, explained that the Medical Board, in agreeing with the interpretation that petitioner's stress test was negative as to myocardial ischemia, "ruled out ischemic heart disease as the cause of atrial fibrillation" which he further described as "the one type of heart disease that they have used as a guide for the intent of the Heart Bill". The significance accorded by Dr. Robinson to the ruling out of ischemic heart disease as the cause of petitioner's atrial fibrillation may, in lay terms, be said to be equivalent to eliminating stress-related heart disease as the basis for petitioner's condition. After opposing views were exchanged as to whether this sufficiently rebutted the Heart Bill presumption, the Trustees, by tie vote, failed to approve either accident or ordinary disability and, accordingly, petitioner was retired on ordinary disability (Matter of City of New York v Schoeck, 294 NY 559).

Petitioner, thereafter, commenced the instant article 78 proceeding seeking to annul respondent's determination denying him an accidental disability pension pursuant to General Municipal Law § 207-k (the Heart Bill). That statute provides that any condition of impairment of health caused by diseases of the heart, resulting in total or partial disability or death of any policeman (or fireman) who successfully passed a physical examination on entry into service, shall be presumptive evidence that it was incurred in the performance and discharge of duty, unless the contrary be proven by competent evidence. (See, Uniformed Firefighters Assn. v Beekman, 52 NY2d 463.)

In addition to a transcript of the Board of Trustees' proceedings, the Medical Board's reports and the various medical documents and reports considered by that Board, the record before Special Term also included an affidavit by the Chairman of the Medical Board, Dr. Jacob I. Hirsch, a cardiologist, amplifying and explaining the significance and meaning of the technical terms utilized in the various reports and proceedings herein. According to Dr. Hirsch, it is a well-established medical fact that neither physical nor emotional stress is considered to be the cause of atrial fibrillation when it appears as an

isolated manifestation, that atrial fibrillation may be considered stress related when it appears in conjunction with underlying heart disease which may be stress related, but that petitioner evidenced no objective manifestations of underlying heart disease since neither his EKG, his stress test, nor the Board's own examination revealed any indication of prior myocardial infarction (heart attack) or of myocardial ischemia (an inadequate flow of blood and oxygen to the heart muscle) or evidence of any coronary heart disease leading to the conclusion that "petitioner's atrial fibrillation is unaccompanied by underlying stress-related coronary disease and is therefore not stress-related".

Special Term, pointing to the decision in *Matter of Sweeney (McGuire)* (NYLJ, Nov. 15, 1979, p 7, col 4, *affd without opn* 81 AD2d 554), involving a markedly similar medical condition, concluded that the determination by the respondent Medical Board which did not find a congenital or non-job-related cause for petitioner's heart disease but "merely determined that his disease is not stress-related" was insufficient to rebut the presumption in the Heart Bill.

Unlike the evidence in support of the Board's finding in the *Sweeney* case *(supra,* p 11, col 1) which the court there described as "merely a bald conclusory statement or an opinion, unsupported by any evidence", there is a substantial evidentiary predicate in the instant case, both by way of the various test reports and Dr. Hirsch's submission, to support the Board's determination that petitioner's condition was not stress related. In any event, the recent decision in *Matter of Goldman v McGuire* (101 AD2d 768, *affd for reasons stated below* 64 NY2d 1041) is controlling. That case holds that competent evidence which demonstrates that a heart condition which, in the absence of hypertension or coronary disease, is not stress related or induced by occupational factors is sufficient to rebut the statutory presumption and that the Medical Board is not required to identify the cause of the condition.

In light of the *Goldman* decision *(supra),* we find that here, where the competent medical evidence showed that petitioner's atrial fibrillation, even though of unknown origin, was not accompanied by underlying heart disease and was therefore not stress related, the Heart Bill presumption was rebutted and the decision of the Board of Trustees had a rational basis which should not have been disturbed. Concur—Murphy, P. J., Sandler, Asch, Kassal and Ellerin, JJ.